UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS LLC,<br><br>                          Plaintiff,<br><br>             v.<br><br>FUBU RADIO INC.,<br><br>                          Defendant. | 25-CV-2777 (RA)<br><br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Global Weather Productions LLC, having brought a single count of copyright infringement against Defendant Fubu Radio Inc, now moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a default judgment against Fubu, together with a permanent injunction and attorney's fees. Although Fubu is aware of the action, it has failed to formally appear—and has not opposed this motion. For the reasons stated herein, the motion is granted.

## BACKGROUND

The Court draws the following facts from the Complaint and documents supporting Plaintiff's motion. Michael Clement, a professional storm chaser, along with Jonathan Petramala, a journalist by trade, recorded an eleven-minute and twenty-nine second video of the damage wrought by Hurricane Beryl in Carriacou, Grenada (the "Video"). *See* Dkt. No. 19 ("Clement Decl.") ¶ 3. Global Weather Productions, a professional videography company with a focus on weather events, was founded by Petramala and owns the rights to the Video. Dkt. No. 1 ("Compl.") ¶¶ 6, 11; Clement Decl. ¶ 3. Fubu Radio is a "radio and journalism news platform" based in New York City. Clement Decl. ¶ 28.

On July 2, 2024, Clement and Petramala published the Video to their personal YouTube channels. The Video was also licensed to and published by AccuWeather, ABC, NBC, CBS, and WxChasing. Clement Decl. ¶¶ 13, 24. Two days later, Global Weather discovered that the Video was being displayed in full on Fubu's Instagram account @officialfuburadio "as part of a social media post on the hurricane in Grenada," at two different URLs. *Id.* ¶¶ 32–33; Compl. ¶ 4. Later that summer, Global Weather registered the Video with the United States Copyright Office under Registration Number PA 2-489-860. Clement Decl. ¶ 25. At no point did Global Weather give its consent to Fubu to use the Video, nor did Fubu compensate it for its use. *Id.* ¶¶ 34–36.

Global Weather commenced this action on April 3, 2025 and served Fubu on April 16, 2025 through the Secretary of State of New York. Fubu never answered or appeared. Global Weather then obtained a certificate of default on June 2, 2025, and moved for default judgment on June 25, 2025. Dkt. No. 17 ("Mot. for Default Judgment"). The Court held three order to show cause hearings. Keith Perrin, the Chief Executive Officer ("CEO") for Fubu, appeared unrepresented by counsel at two of them, on August 22, 2025 and November 7, 2025. Dkt. No. 33 ("Pl.'s Letter"). At both hearings in which he appeared, the Court informed Perrin that corporations cannot proceed *pro se* in federal court and gave him time to find counsel and submit responsive papers. *See Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 187 (2d Cir. 2006) ("It is well-settled law that a corporation may appear in the federal courts only through licensed counsel.").[1] He did not do so, apparently because Fubu was unable to afford counsel. *See, e.g.*, Email from Keith Perrin to Plaintiff and the Court (Nov. 6, 2025, at 11:29 ET) ("I've been contacting attorneys consistently but due to the fact I don't have money to pay it's been hard. Even trying to get a pro

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

2

bono lawyer is challenging. I finally got in touch with the lawyer below but I need more time."). Fubu has not appeared since the November 7, 2025 hearing.

## LEGAL STANDARD

"In determining whether to grant a motion for default judgment, a court within this district considers three factors: '(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 236 (S.D.N.Y. 2023) (quoting *Nespresso USA, Inc. v. Africa America Coffee Trading Co. LLC*, 2016 WL 3162118, at *2 (S.D.N.Y. June 2, 2016)).

The Court must also "determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action." *Id.* (citing *Nespresso USA*, 2016 WL 3162118, at *2). "Once liability is determined, the plaintiff bears the burden of establishing an amount of damages with reasonable certainty." *Id.*  The Court must then "determin[e] the proper rule for calculating damages . . . and assess[] plaintiff's evidence supporting the damages." *Id.* (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 3d 123, 124 (S.D.N.Y. 2003)). That award, if granted, cannot "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Court can "rely on affidavits, documentary evidence, and other evidence as long as it ensured there was a basis for the damages specified in the default judgment." *Sadowski v. Tribuna Abierta, Inc.*, 2024 WL 2279166, at *2 (S.D.N.Y. Apr. 16, 2024), *report and recommendation adopted*, 2025 WL 715144 (S.D.N.Y. Mar. 4, 2025).

## DISCUSSION

For the reasons that follow, the Court finds that default judgment against Fubu is warranted. First, Fubu willfully defaulted. It never filed an appearance or responsive pleading in the action,

though, its CEO was clearly aware of the proceedings. Second, there is insufficient information before the Court to establish the applicability of an affirmative defense. Third, denying Global Weather's motion for default judgment would be prejudicial because it would be left without recourse.

I.  **Copyright Infringement Liability**

To establish liability under the Copyright Act, a copyright owner must show that "(1) the defendant has actually copied the owner's work and (2) that a substantial similarity exists between the defendant's work and the protectable elements of the owner's work." *Stokes*, 681 F. Supp. 3d at 238. As the Supreme Court has explained, "[u]pon registration of the copyright, . . . a copyright owner can recover for infringement that occurred both before and after registration." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019). Whether a defendant has copied the owner's work can be demonstrated by direct evidence "if the two works are so strikingly similar as to preclude the possibility of independent creation," *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) or indirect evidence if a "substantial similarity exists between the defendant's work and the protectable elements of the owner's work." *Stokes*, 681 F. Supp. 3d at 238.

The requisite elements of copyright infringement are readily met. Global Weather owns the copyright in the Video, as established by its having obtained federal copyright registration. The Complaint alleges that Fubu posted the Video on its Instagram account, and attaches screenshots of the two relevant posts, demonstrating actual copying. Compl. ¶¶ 26, 27; *id.*, Ex. 2 ("Screengrabs of Defendant's Instagram Page"). Global Weather also includes screenshots of the posts that Defendant shared on its page, which it alleges are identical (and which appear to be identical) to the screenshot of Global Weather's Video as posted on YouTube. *Compare* Compl., Ex. 1

("Screengrab of Plaintiff's Video on YouTube") *with* Screengrabs of Defendant's Instagram Page. Accordingly, Global Weather has established Fubu's liability for copyright infringement.

## II.   **Affirmative Defenses**

While Global Weather's motion for default judgment was pending, this Court, *sua sponte*, ordered it to show cause why its Complaint should not be dismissed on the ground that Fubu was entitled to an affirmative fair use or sublicensure defense. Dkt. No. 28 ("Order for Supplemental Briefing"). Although courts "must be cautious about raising an affirmative defense *sua sponte* on behalf of defaulting defendants," *Romanova v. Amilus Inc.*, 138 F.4th 104, 120 (2d Cir. 2025), "there is no categorical rule barring a court from considering an affirmative defense available to a defaulting defendant." *Id.* This is especially true in cases like the one at bar, where a small company cannot afford defense counsel. *Id.* at 121 ("Hiring counsel costs money, often in substantial amount. At times, small corporations simply cannot afford the expense of counsel needed to defend a suit."). In those cases, "[d]efault does not necessarily preclude the court's consideration of affirmative defenses available to the defendant, especially when they have obvious merit and their applicability is evident from the face of the complaint. Otherwise, plaintiffs could often easily inflict unjustified harms on small corporate enemies. Intimidation tactics would threaten to strip small creators of their content." *Id.* Thus, the Court considers two affirmative defenses potentially available to Fubu, though the burden of proof for each such defense remains with Fubu. For the following reasons, however, the Court finds that Fubu is not entitled to either affirmative defense on the present record.

### A. Fair Use Defense

As to a potential fair use defense, courts "determine whether use of copyrighted material was fair by weighing four factors," *Richardson v. Townsquare Media, Inc.*, 2025 WL 89191, at *2

(S.D.N.Y. Jan. 14, 2025); 17 U.S.C. § 107, namely: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;" and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Although the factors are roughly in equipoise, without more, the Court cannot determine that a fair use defense applies.

The first factor—the purpose and character of the use, including whether that use is of a commercial nature—weighs in favor of Global Weather. Courts consider whether the use of the material was transformative, with more transformation leaning further in favor of the fair use defense. "A transformative use alters the purpose and context of the copyrighted work with new expression, meaning, or message." *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 196 (S.D.N.Y. 2021). In the context of news reporting, a transformative use can be achieved by discussing a photograph or video itself in the news piece, even when the alleged infringer does not actually alter the content itself. *Id.* at 197. ("The article stresses that the [v]ideo went 'viral' and that the accompanying photograph was 'grabbing attention.'"). Although Fubu may have re-shared the Video in the context of raising awareness for a hurricane, it did not discuss or contextualize the Video itself, or in any other way transform Global Weather's content. Courts have held that the "commercial nature of a secondary use" is also relevant, and that "[t]he greater the private economic rewards reaped by the secondary user . . . , the more likely the first factor will favor the copyright holder." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016). Global Weather makes only a bare bones allegation that Fubu derived economic benefits from its re-posting of the Video. Compl. ¶¶ 36–37. Even assuming Fubu did not profit financially from the Video, however, that does not surmount the lack of transformation of the

Video. *See Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 142 (2d Cir. 1998) ("The more critical inquiry under the first factor and in fair use analysis generally is whether the allegedly infringing work merely supersedes the original work or instead adds something new, with a further purpose or different character, altering the first with new meaning or message, in other words whether and to what extent the new work is transformative."). The first factor thus weighs in favor of Global Weather.

The second factor—the nature of the work—weighs in favor of Fubu. Courts look to whether the work is creative or, alternatively, informational, with creative works more likely to be entitled to copyright protection. *Nicklen*, 551 F. Supp. 3d at 197. The work documenting the aftermath of a hurricane is primarily informational, despite the craft and skill it may have taken to produce it. This weighs in favor of Fubu. Additionally, courts consider whether the work was published or not, given the importance of the "author's right of first publication." *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 607 (S.D.N.Y. 2020). Here, the Video was previously published, as discussed, on YouTube, further weighing in favor of Fubu. Clement Decl. ¶ 24.

The third factor—amount of work used—weighs in favor of Global Weather, since Plaintiff alleges that the Video was shared in its entirety. *Nicklen*, 551 F. Supp. 3d at 198.

Finally, the fourth factor—market effect—weighs in favor of Fubu. The fourth factor asks "not whether the second work would damage the market for the first . . . but whether it *usurps* the market for the first by offering a competitive substitute." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 48 (2d Cir. 2021) (emphasis in original). Although Global Weather does plausibly allege the existence of a market for the Video, and had already licensed it to AccuWeather, ABC, NBC, CBS, and WxChasing, Clement Decl. ¶ 24, Fubu did not purport to offer a market substitute for the original. A video, fleetingly shared on a low-traffic Instagram page

7

that does not advertise itself as a competitor to Global Weather, does not amount to a usurpation of that market by Fubu. Indeed, the caption on Fubu's post indicates that at least one of its employees is from Grenada, the country where the hurricane wrought its devastation, suggesting that the intent behind sharing the Video was to raise awareness for his community. Screengrabs of Defendant's Instagram Page at 2 ("Fubu radio[']s @dylandili home country of Grenada, Carriacou and Petite Martinique has been hit with a category 5 hurricane . . . ."). With equal factors weighing in favor of each party, and given that the Court raised this defense *sua sponte*, without more, the Court determines that Fubu is not entitled to a fair use defense.

### B. Sublicensure Defense

In addition to the fair use defense, the Court also *sua sponte* evaluates whether Fubu was entitled to a sublicensure defense. When a user uploads content to YouTube, "it grant[s] a license to YouTube to use the video and a sublicense to other users of YouTube, including [defendant], to use the video." *Richardson*, 2025 WL 89191, at *4. Those licenses "were explicitly and unambiguously laid out in YouTube's Terms of Service, and the sublicense clearly extends to embedding the video." *Id.* In order to "embed an image, the coder or web designer would add an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image. An embedded image will then hyperlink . . . to [a] third-party website." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018). Social media sites, including YouTube, supply this code to facilitate "embedding on [users'] own webpages." *Id.* Although it is undisputed that Clement and Petramala uploaded the Video to their personal YouTube channels, it is not clear from the record that Fubu procured it from YouTube or shared the Video via a mechanism "enabled by a feature of the service." *Richardson*, 2025 WL 89191, at *4; *see also* Dkt. No. 30 ("Pl.'s Supplemental Br.") at 6–7. Without information from

Fubu, the Court is unable to assess with confidence whether or not it is entitled to this defense, and thus declines to apply it on Fubu's behalf.

### III. Statutory Damages

Having found Fubu liable for copyright infringement, the Court turns next to Global Weather's application for statutory damages, concluding that it should be awarded the minimum of $750. The Copyright Act permits a plaintiff to recover either its actual damages and the infringer's profits, or, in the alternative, statutory damages. 17 U.S.C. § 504(a). In the instant case, Global Weather seeks statutory damages of $30,000 for Fubu's infringement. It may do so because its work was registered within three months of Fubu's infringement. *See Tabak v. Lifedaily, LLC*, 2021 WL 5235203, at *4 (S.D.N.Y. Nov. 9, 2021) (retroactively enforcing a copyright because it was registered within three months of infringement, as 17 U.S.C. § 412(2) allows). Global Weather became aware of the fact that Fubu copied the Video on July 4, 2024, *see* Clement Decl. ¶ 32, and registered the Video with the United States Copyright Office less than a month later on August 2, 2024. *Id.* ¶ 25.

A plaintiff who elects statutory damages under the Copyright Act is entitled to an award of between $750 and $30,000 per work infringed, "as the court considers just." 17 U.S.C. § 504(c)(1). For willful infringement, the maximum permissible award per infringed work rises to $150,000. *Id.* § 504(c)(2). Within the statute's limits, "[d]istrict courts enjoy wide discretion in setting statutory damages." *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 171 (2d Cir. 2020).

As an initial matter, the Court concludes that Fubu's infringement did not rise to the level of willful, thus limiting its exposure. Copyright infringement is considered willful if the plaintiff shows "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to,

the copyright holder's rights." *Island Software & Comput. Servs., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). For "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir. 1992); *see also Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 435 (S.D.N.Y. 2018) ("In other words, defendant's knowledge may be inferred from his or her conduct").

Global Weather asserts that the Court should infer willfulness from Fubu's failure to appear and its disabling of the relevant posts shared on its Instagram account after it was informed of its infringing conduct. *See* Dkt. No. 20 ("Pl.'s Br.") at 12–14. If anything, its disabling of the posts weakens Global Weather's attempt to frame the infringement as willful. Moreover, default alone, is insufficient to characterize an infringement as willful, with courts finding only a "weak" "inference of willfulness" when one party defaults. *See Green v. Akonik Label Grp. LLC*, 2020 WL 13532377, at *2 (S.D.N.Y. Oct. 26, 2020). Global Weather makes no additional assertions, and there is no evidence, that Fubu willfully disregarded its rights—by, for example, stripping a watermark from or failing to remove the Video. *See Stokes*, 681 F. Supp. 3d at 238–40 (refusing to take down the infringing photograph after the lawsuit was filed); *Reilly v. Commerce*, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (willfulness established on default because defendant "accessed the Photograph . . . copied it, cropped it so as to remove the watermark or notice, and then displayed it"). Furthermore, Fubu did not entirely ignore the lawsuit—sending its CEO to two order to show cause hearings, in spite of the fact that Fubu could not afford to hire counsel.

Nevertheless, Global Weather is still entitled to some statutory damages in light of Fubu's breach of the Copyright Act. Global Weather asks the Court to award the maximum amount of statutory damages. The Court declines to do so, awarding the minimum of $750.

When determining the amount of statutory damages to set for copyright infringement, courts consider the following factors: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010). Additionally, Global Weather has a duty to "submit a record sufficient to support the amount of statutory damages that he is seeking." *Green*, 2020 WL 13532377, at *2.

With respect to the first factor—Fubu's state of mind—as discussed above, Global Weather has not demonstrated that Fubu's misconduct was willful. The second and third factors—the expenses saved, and the profits earned by the infringer, as well as the revenue lost by the copyright holder—are not established in Global Weather's pleadings or supplementary briefing. Courts in this district have consistently "reject[ed] the notion" that courts "need not consider evidence of actual losses or licensing fees in assessing appropriate statutory damages." *See Green*, 2020 WL 13532377 at *3 (collecting cases). As to the fourth factor—the deterrent effect on the infringer and third parties—Global Weather does not provide evidence of how a favorable result will yield specific deterrence in this case, but rather cites broadly to the policy goals of the Copyright Act. *See* Pl.'s Br. at 13–15. Here, Fubu removed the infringing content promptly after being notified, and there is no basis to believe there is a need for specific deterrence. By contrast, the need for general deterrence does support some award of statutory damages. "[T]he fifth factor, the infringer's cooperation, weighs in Plaintiff's favor simply by virtue of Defendant's default." *Green*, 2020 WL 13532377, at *3. Finally, the sixth factor—the conduct of the parties—is neutral. Although Fubu failed to participate meaningfully in the litigation, its recalcitrance throughout the

11

process appears to have been related to the financial realities facing small businesses defending federal lawsuits. *See, e.g.*, Email from Keith Perrin to Plaintiff and the Court (Nov. 6, 2025, at 11:29 ET).

Cases that award the maximum amount of statutory damages—what Global Weather seeks—usually have "additional evidence of willfulness and allegations of actual awareness" including cease-and-desist letters and requests for injunctive relief. *Idir v. La Calle TV, LLC*, 2020 WL 4016425, at *3 (S.D.N.Y. 2020). "At the punitive end of the scale, the statutory maximum is typically reserved for truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order." *Stokes*, 681 F. Supp. 3d at 238. Courts in the Second Circuit have "typically awarded statutory damages between $1,000 and $5,000 in cases of single use copyright infringement." *Sadowski v. Yeshiva World News, LLC*, 2023 WL 2707096, at *5 (E.D.N.Y. Mar. 16, 2023). Here, there is no egregious conduct, or even evidence of actual willfulness beyond the default itself. To the contrary, Fubu removed the infringing material as soon as it was notified by Global Weather. *See* Pl.'s Br. at 10 (acknowledging "Defendant disabled the display of Plaintiff's video."). As a result, the Court awards Global Weather the minimum of $750 in statutory damages.

## IV. Attorney's Fees

Although the Copyright Act does not provide an "automatic right to an award of attorney's fees," *Stokes*, 681 F. Supp. 3d at 243, it is within a district court's discretion to "award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* (quoting 17 U.S.C. § 505). Courts consider factors including "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. At the very least, the third and fourth

factors weigh in favor of awarding fees. Moreover, courts in this district have held that an award of attorney's fees is "generally appropriate where the defendant has defaulted." *Id.* at *6. Accordingly, the Court awards reasonable attorney's fees and costs.

**A. Hourly Rates**

Global Weather requests $10,991 in attorney's fees. Dkt. No. 21 ("Statement of Damages") ¶ 8. To assess whether this award is reasonable, courts use the lodestar calculation, which consists of the number of hours spent on the matter "multiplied by a reasonable hourly rate." *See Stokes*, 681 F. Supp. 3d at 244. "Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits." *Id.* Here, Global Weather's counsel seeks the following fees: $895 per hour for Craig Sanders, a senior partner and a managing member of the Sanders Law Group; $600 per hour for Jonathan Cader, a senior associate with twenty-four years of experience; $500 per hour for Dina Nouhian, an associate with thirteen years of experience; and $200 per hour for Julie Busch, a paralegal.[2] Dkt. No. 18 ("First Nouhian Decl.") ¶¶ 22–29; Time Billing Records. This Court "agrees with other courts in this District that have considered similar rates for Mr. Sanders . . . in context of [his] firm's size and location and found [the rates] to be in excess of a reasonable partner rate for copyright cases." *Martinka v. Hagedorn Comm'ns, Inc.*, 2025 WL 2642584, at *9 (S.D.N.Y. Sept. 15, 2025). In *Seidman v. Yid Info. Inc.*, for instance, a case brought by Mr. Sanders a little over a year ago, the court found that his "requested hourly rate of $750 is nearly double the rate that courts have approved for partners in [the Eastern District of New York]," and that instead, $450 was reasonable. 2024 WL 4664669, at *8 (E.D.N.Y. June 11, 2024). Like in *Sara Designs, Inc. v. A*

---

[2] In the Time Billing Records, attached to the First Nouhian Declaration, Ms. Busch's rate is listed as $150 and not $200. *See* First Nouhian Decl., Ex. 4 ("Time Billing Records").

*Classic Time Watch Co.*, the Court not only finds a rate of $450 reasonable for Mr. Sanders, but $325 reasonable for Mr. Cader, and $275 for Ms. Nouhian. 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018). No background is provided for Ms. Busch to justify her fee, and "[w]here an applicant fails to provide background and experience[,] information that would enable a court to assess the reasonableness of a requested rate, a court may use its discretion to award fees at a lower rate." *Harbus v. Vosa TV Inc.*, 2025 WL 1153818, at *16–17 (E.D.N.Y. Apr. 21, 2025) (lowering the paralegal fee to $75 per hour). Accordingly, the Court finds the following fees to be reasonable: $450 for Mr. Sanders, $325 for Mr. Cader, $275 for Ms. Nouhian, and $75 for Ms. Busch.

### B. Hours Worked

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005). In making this determination, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same). Courts should exclude "excessive, redundant or otherwise unnecessary hours" from their lodestar calculation. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted reflect that Global Weather's attorneys and other billed personnel worked a total of 20.6 hours. Time Billing Records at 2. As is appropriate, the most junior attorney billed the highest number of hours, with Ms. Nouhian billing 13.8 hours, followed by Mr. Cader who billed 5.5 hours, and Mr. Sanders who billed 0.8 hours. Ms. Nouhian appears to have spent most of her time preparing the motion for default judgment, along with the relevant briefings and declarations. *Id.* The total number of hours worked, however, far exceeds the number of hours worked in similar recent cases. In *Stokes*, for instance, largely the same group of attorneys worked a total of 13.1 hours, 681 F. Supp. 3d at 245, while here they worked a total of 20.6 hours. And in *Martinka v. Hagedorn Communications, Inc.*, a similar case in which the Sanders Law Group sought a default judgment against a defendant for use of a photograph, Mr. Sanders, an associate, and several paralegals billed a total of 7.8 hours. 2025 WL 2642584, at *9. The number and complexity of the various filings in the instant case appear similar to those in *Martinka*, in which the complaint was nine pages, comparable to the ten-page Complaint before the Court now. *See generally* 2025 WL 2642584, Dkt. No. 1; Compl. Similarly, the briefs supporting the motion for default were twenty-five and thirty-one pages respectively. *See Martinka*, 2025 WL 2642584, Dkt. No. 20; Pl.'s Br. Although the Court recognizes that Global Weather was required to appear at three brief telephonic order to show cause hearings, it nonetheless finds that the number of hours billed by Ms. Nouhian and Mr. Cader are excessive when comparing them to similar cases, and therefore finds that the total number of compensable hours and rates are as follows:

| Timekeeper | Requested Rates | Approved Rates | Requested Hours | Approved Hours | Fees |
|---|---|---|---|---|---|
| Craig Sanders | $895 | $450 | 0.8 | 0.8 | $360 |
| Jonathan Cader | $600 | $325 | 5.5 | 3 | $975 |
| Dina Nouhian | $500 | $275 | 13.8 | 7 | $1,925 |
| Julie Busch | $200 | $75 | 0.5 | 0.5 | $37.5 |
| Total Fees: | | | | | $3,297.5 |

### C. Costs

Global Weather seeks $460 in costs. Statement of Damages ¶¶ 14–15; First Nouhian Decl., Ex. 7 ("Invoice"). Counsel has submitted copies of the invoice for the process server fees, First Nouhian Decl., Ex. 7, and the Court takes judicial notice of payment of the filing fee. Those expenses are routinely recoverable. *See, e.g.*, *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees, shipping costs, and research fees are "typically awarded when a defendant defaults"). "Moreover, costs associated with docket fees, service of process fees, and other miscellaneous fees may also be recovered pursuant to Local Civil Rule 54.1." *Stokes*, 681 F. Supp. 3d at 246 (citing S.D.N.Y. Local Rule 54.1(c)(10)). The Court has reviewed Global Weather's submissions and finds the costs set forth are recoverable. Accordingly, Global Weather is awarded $460 in costs.

### D. Pre-Judgment Interest

Plaintiff also seeks pre-judgment interest. "The Copyright Act neither allows nor prohibits an award of pre-judgment interest, and the issue of the permissibility of pre-judgment interest is unresolved in this Circuit." *Capitol Records, Inc. v. MP3tunes, LLC*, 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015) ("Some courts have declined to award pre-judgment interest for willful

copyright infringement, finding that pre-judgment interest should be reserved for 'exceptional' circumstances."). Here, the Court determines, in its discretion, not to award pre-judgment interest.

V.     **Permanent Injunction**

The final question is whether Global Weather is entitled to a permanent injunction. Having succeeded on the merits, this Court may enter a permanent injunction to "prevent or restrain infringement of a copyright," *see* 17 U.S.C. § 502(a), if Global Weather can demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). In copyright cases, "[c]ourts routinely . . . award[] injunctive relief . . . where liability is established and there is a threat of continuing infringement." *Gogo Apparel, Inc. v. Daruk Imports, Inc.*, 2020 WL 4274793, at *7 (S.D.N.Y. June 11, 2020).

Although it is true that in the context of default judgments, when a defendant fails to appear, courts typically find that plaintiffs face a "threat of continuing violations," that is not the case here. Like in *Harrington v. Kaushan Media Corporation*, Fubu has removed the Video from its Instagram page, and does not appear likely to infringe another of Global Weather's copyrights. 2023 WL 8880311, at *7 (S.D.N.Y. Nov. 21, 2023), *report and recommendation adopted*, 2023 WL 8879172 (S.D.N.Y. Dec. 22, 2023) (declining to grant permanent injunction where "Plaintiff ha[d] adduced no evidence that Defendant is continuing to infringe the copyright . . . ," adding that "[t]he article appears to have been taken down from Defendant's website and there is no indication that the Work is posted somewhere else on Defendant's website"). Given the absence

17

of a threat of continuing infringement, even assuming that the remaining factors favor Global Weather, the Court declines to grant its request for injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Global Weather and against Fubu, awarding Global Weather statutory damages pursuant to 15 U.S.C. § 504(c) in the amount of $750; attorney's fees in the amount of $3,297.5; costs in the amount of $460; and no pre-judgment interest, for a total of $4,507.5. The Clerk of Court is hereby respectfully directed to terminate any pending motions and close this case.

SO ORDERED.

Dated:      February 3, 2026
            New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge